IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARTEK BIOSCIENCES CORP.,          :
      Plaintiff                             :
                                        :
      v.                                    :        CIVIL NO. AMD 04-3349
                                          :
ROBERT ZUCCARO, as stockholders'   :
representative of the former interest      :
holders of OmegaTech, Inc.,              :
       Defendant                            :
                            ...o0o...

MEMORANDUM OPINION

This is a contract dispute arising from the 2002 merger of Martek Biosciences Corporation and OmegaTech, Inc., two biotechnology companies that develop docosahexaenoic acid ("DHA"), an omega-3 fatty acid that purportedly improves cardiovascular health and aids in the development of the brain and eyes. At the center of the controversy is an earnout provision in the merger agreement, in which Martek is required to distribute $10 million in shares of Martek common stock to the former interest holders of OmegaTech if a "nutritional milestone" is met.

Robert Zuccaro, the stockholders' representative of the former interest holders of OmegaTech, argues that the milestone was met when the Institute of Medicine (IOM), a division of the National Academy of Sciences (NAS),[1] issued a draft report on September 5, 2002, entitled "Dietary Reference Intake: Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein and Amino Acids," recommending certain dietary nutrients. Martek, on

---

[1]The parties dispute the exact relation between the IOM and the NAS, but that dispute is immaterial.

the other hand, argues that the draft report does not fulfill the milestone requirements, and has refused to transfer the $10 million in shares.

Zuccaro instituted arbitration proceedings in respect to the parties' dispute. Martek, insisting that the dispute was not controlled by the merger agreement's arbitration clause, filed this lawsuit seeking declaratory relief determining that the nutritional milestone had not been met. After I ruled that the dispute was not subject to arbitration, *see* 2004 WL 2980741 (D. Md., Dec. 23, 2004), and after settlement efforts presided over by a Magistrate Judge were unsuccessful, discovery concluded and now Martek has filed a motion for summary judgment. The parties have thoroughly briefed the issues and a hearing is not necessary. For the reasons explained below, the motion for summary judgment shall be granted.

I.

The dispute pertains to the following nutritional milestone contained in the merger agreement:

> If the National Academy of Sciences (the "NAS"), at any time during the Earn-Out Period, makes an authoritative statement recommending a Dietary Reference Intake (a "Recommendation"), including, without limitation, a Recommended Daily Intake or an Adequate Intake, citing a specific milligram level for the long chain fatty acid docosahexaenoic acid ("DHA") or the long chain fatty acids DHA/EPA (docosahexaenoic acid/eicosapentaenoic acid) that permits application to the U.S. Food and Drug Administration (the "FDA"), pursuant to the Food and Drug Administration Modernization Act, for a nutrient content claim on food labels for DHA or the long chain fatty acids DHA/EPA, provided, however, that this nutrient content claim must be limited to DHA or the long chain fatty acids DHA/EPA and shall specifically not include the short chain omega-3 fatty acid alpha-linolenic acid ("LNA"), such number of shares of Martek Common Stock equal to $10 million divided by the Current Average Price,

subject to the adjustment in Section 1.5(c)(vii), shall be distributed to the Interest Holders . Martek shall use, and shall cause its Subsidiaries to use, commercially reasonable efforts to persuade NAS to make such a Recommendation during the Earn-Out Period.

*Merger Agreement § 1.5(c)(v)(A).*

The issue before the court is how the nutritional milestone should be interpreted. Martek argues that it is unambiguous and therefore the court should only look to the terms of the contract in deciding if the milestone was met. Zuccaro urges the court to look beyond the contract-- to parol evidence-- so as to better understand the true meaning of the provision. I conclude that Martek is correct: the above language is unambiguous and therefore parol evidence may not be considered as an aid in interpretation. Furthermore, the IOM report fails to fulfill the requirements of the nutritional milestone, and Martek need not pay the Zuccaro group $10 million in stock.

II.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A fact is material for purposes of summary judgment, if, when applied to the substantive law, it affects the outcome of the litigation. *Id*. at 248.  Summary judgment is also appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Laura Campbell Trust v. John Hancock Life Ins. Co.*, 411 F. Supp. 2d 606, 609 (D. Md. 2006).

In Maryland,  parties may "agree as to the law which will govern their transaction, even as to issues going to the validity of the contract." *National Glass, Inc., v. J.C. Penney Props., Inc.*, 336 Md. 606, 610 (1994) (quoting *Kronevet v. Lipchin*, 288 Md. 30, 43 (1980)). The parties here agree that Delaware law applies, as specified in the merger agreement. *Merger Agreement § 8.9.*

Under Delaware law, contracts are to be construed objectively. "Under the objective theory of contracts, when a writing is clear, 'the writing itself is the sole source for gaining an understanding of intent.'" *Haft v. Haft*, 671 A.2d 413, 417 (Del.Ch. 1995) (quoting *City Investing Co. Liquidating Trust v. Continental Cas. Co.,* Del.Supr., 624 A.2d 1191, 1198 (1993)). When a contract is "clear and unambiguous," courts will not look beyond its terms and provisions. *Continental Ins. Co. v. Rutledge & Co., Inc.*, 750 A.2d 1219, 1228 (Del. Ch. 2000); *Myers v. Myers*, 408 A.2d 279, 280 (Del. 1979). Conversely, a court is only permitted to examine parol evidence if the face of the contract is unclear and ambiguous. *True North Commc'ns, Inc. v. Publicis, S.A.*, 711 A.2d 34, 38 (Del. Ch. 1997); *Intel Corp. v. Broadcom Corp.*, 173 F. Supp. 2d 210, 220-21 (D. Del. 2001).

Here, Zuccaro argues that the nutritional milestone is so full of factual inaccuracies that it is rendered ambiguous and parol evidence is needed to interpret it. He points to what he says are several inaccuracies or mistakes in the provision, which include: (1) confusing

the NAS with the IOM (that is, he says the IOM is not a subdivision of the NAS, but that both are subdivisions of the National Academies);[2] (2) saying that the Food and Drug Administration Modernization Act (FDAMA) "permit[s] application" when in fact it "authorizes notifications," *see* 21 U.S.C. §343(r)(2)(G); (3) using the phrase "Recommended Daily Intake," which, according to Zuccaro, is used in neither IOM nor Food and Drug Administration terminology.

I am not convinced by this argument. While the nutritional milestone could have been more artfully drafted, the factual mistakes pointed out by Zuccaro do not rise to a level rendering that section of the merger agreement ambiguous for purposes of contract interpretation.[3] First, the exact relationship between the IOM and NAS is not material to the dispute at hand. It is unquestionable that the IOM had the ability to release a report that would meet the milestone criteria-- even though the nutritional milestone specifically calls for a statement from the NAS. The parties seem to agree on this point. Likewise, is not material, or ambiguous, for the section to have mischaracterized the process by which FDAMA authorizes notifications. Finally, the phrase "recommended daily intake" is patently

---

[2]If defendants are correct about this, then at the very least there is a common misconception regarding the relationship between the NAS and the IOM. A recent New York Times article states: "The Food and Drug Administration statement directly contradicts a 1999 review by the Institute of Medicine, a part of the National Academy of Sciences, the nation's most prestigious scientific advisory agency." Gardiner Harris, *F.D.A. Dismisses Benefit of Medical Marijuana*, N.Y. Times, April 21, 2006.

[3]Indeed, the defendant undermines this argument (that inaccuracies render the contract ambiguous) in the very next sentence of its memorandum: "Regardless of the factual inaccuracies, the purpose and objective of the milestone are clear." Defs. Mem. at 17.

clear, and it is irrelevant whether the phrase is part of the IOM or FDA lexicon. By no means do these three "mistakes" render the milestone ambiguous.

Because, as a matter of law, the nutritional milestone is unambiguous, parol evidence may not be considered in its interpretation. *Kysor Indus. Corp. v. Margaux, Inc.*, 674 A.2d 889, 898 (Del. 1996) ("Where a contract's language is unambiguous, parol evidence cannot be considered."); *Pellaton v. Bank of New York,* 592 A.2d 473 (Del. 1991); *Citadel Holding Corp. v. Roven*, 603 A.2d 818 (Del. 1992). Therefore, the nutritional milestone must be examined on its face, and the requirements set forth there then measured against the September 5, 2002, IOM, report, to see if its requirements have been met.

This analysis is straightforward. First, the milestone clearly is not met inasmuch as the IOM report does not "cite a specific milligram level" that it recommended for DHA or DHA/EPA that could be applied to a nutrient content claim. As Martek points out, the IOM report states a level (ten percent) *up to which* EPA and DHA can contribute toward adequate intake ("AI") for alpha-linolenic acid (LNA).[4] IOM Report at 8-38. As used by IOM, an "up-to" amount is certainly not a "specific milligram level." Rather, it is an acceptable range. Whereas the parties, by the nutritional milestone, sought a declaration of the level of DHA that a person *should* take, what they got from the IOM report was an upper limit of how much someone *could* take. In this (material) sense, the nutritional milestone is not met.

Additionally, the nutritional milestone is not met inasmuch as the merger agreement specifically requires that an NAS endorsement of DHA and DHA/EPA come unattached to

---

[4]LNA is a short chain omega-3 fatty acid.

a recommendation on LNA. As mentioned above, this is not the case. The IOM report inextricably links the DHA recommendation to LNA intake: "EPA and DHA can contribute up to 10 percent of the total n-3 fatty acid intake and therefore up to this percent can contribute towards the AI for [alpha]-linolenic acid [LNA]." IOM Report at 8-38. This linkage precludes resort to the IOM report as a source of satisfaction of the nutritional milestone.[5]

III.

Because the nutritional milestone in the merger agreement between Martek and OmegaTech is unambiguous, under Delaware law it must be interpreted without resort to parol evidence. The application of such a standard yields but one result: it is clear that the requirements of the nutritional milestone were not met within the contractual earn-out period. Martek's motion for summary judgment, therefore, must be granted. A judgment order follows.

Filed: April 24, 2006                         _____/s/_____
                                              ANDRE M. DAVIS
                                              United States District Judge

---

[5]Martek contends that two other requirements were not met but I need not address those requirements.